UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x

JOSEPH A. FERRARA, SR., FRANK H. FINKEL,
MARC HERBST, DENISE RICHARDSON,
THOMAS F. CORBETT, ANTHONY D'AQUILA,
THOMAS GESUALDI, LOUIS BISIGNANO,
MICHAEL O'TOOLE, and ANTHONY PIROZZI,
as Trustees and Fiduciaries of the Local 282
Welfare Trust Fund, the Local 282 Pension Trust
Fund, the Local 282 Annuity Trust Fund, the Local
282 Job Training Trust Fund, and the Local 282
Vacation and Sick Leave Trust Fund,

                          Plaintiffs,

          - against -

AMANDA CARTING CORP. and BREEZE
NATIONAL INC.,

                          Defendant.

-------------------------------------------------------------------- x

**CV 12 - 1463**

Civil Action No.:

MATSUMOTO, J.

AZRACK, M.J.

## COMPLAINT

Plaintiffs Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise

Richardson, Thomas F. Corbett, Anthony D'Aquila, Thomas Gesualdi, Louis Bisignano,

Anthony Pirozzi, and Michael O'Toole, as Trustees and fiduciaries of the Local 282 Welfare

Trust Fund (the "Welfare Fund"), the Local 282 Pension Trust Fund (the "Pension Fund"), the

Local 282 Annuity Trust Fund (the "Annuity Fund"), the Local 282 Job Training Trust Fund (the

"Job Training Fund"), and the Local 282 Vacation and Sick Leave Trust Fund (the "Vacation

Fund") (collectively, the "Funds"), for their complaint allege as follows:

## INTRODUCTION

This is an action by the Trustees and fiduciaries of employee benefit plans for

injunctive and monetary relief under Sections 502(a)(3) and 515 of the Employee Retirement

00182262.2

Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1132(a)(3) and 1145. This action arises from the failure of defendants Amanda Carting Corp. ("Amanda") and Breeze National Inc. ("Breeze," with Amanda, "Defendants") to pay delinquent contributions and attendant damages due to the Funds as disclosed by an audit of Amanda's books and records for the period from January 1, 2007 through December 31, 2007, and for the failure of Defendants to submit to audit for the period January 1, 2008 through the date of the audit, as required by ERISA, the Trust Agreement governing the Funds, and the applicable collective bargaining agreements.

## JURISDICTION AND VENUE

1.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, Sections 502(a)(3), 502(e)(1), 502(f) and 515 of ERISA, 29 U.S.C. §§1132(a)(3), 1132(e)(1), 1132(f) and 1145.

2.     Venue lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), as the Funds are administered in this district.

## THE PARTIES

3.     Plaintiffs are Trustees and fiduciaries of the Funds within the meaning of 29 U.S.C. §1002(21)(A). Plaintiffs have discretion and control over the assets and administration of the Funds.

4.     The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and §1002(37), with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042. The Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. §186(c)(5).

5.     Pursuant to the terms of various collective bargaining agreements between Local 282, International Brotherhood of Teamsters ("Local 282" or the "Union") and various employers (the "Employers"), the Employers, including Amanda on its own and doing business as Breeze, are required to contribute to the Funds on behalf of employees covered by the collective bargaining agreements.

6.     The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from the Employers and providing benefits to eligible participants.

7.     The collective bargaining agreements and the Trust Agreement are plan documents within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). The Funds are third-party beneficiaries of the collective bargaining agreements.

8.     Upon information and belief, Amanda is, and at all times relevant to this action has been, a domestic business corporation licensed to do business in New York State, with locations at 2603 Stillwell Avenue, Brooklyn, New York 11223 and 24 Creamer Street, Brooklyn, New York 11231. Amanda is, and at all times relevant to this action has been, engaged in the trucking business within the State of New York. Amanda is, and at all times relevant to this action has been, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Article I, Section 1 of the Trust Agreement.

9.     Upon information and belief, Breeze is, and at all times relevant to this action has been, a domestic business corporation licensed to do business in New York State, with locations at 2603 Stillwell Avenue, Brooklyn, New York 11223 and 31 Bay Street, Brooklyn, New York 11231. Breeze is, and at all times relevant to this action has been, engaged in the trucking business within the State of New York. Breeze is, and at all times relevant to this action

- 3 -

has been, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Article I, Section 1 of the Trust Agreement.

10.     Upon information and belief, Amanda does business as Breeze. Breeze is therefore jointly and severally liable for amounts due from Amanda.

## FACTUAL BASIS FOR CLAIMS

The Collective Bargaining Agreements, the Trust Agreement, and the Obligations to Contribute to the Funds and Submit to Audit

11.     Amanda has been a party to a series of collective bargaining agreements with Local 282 (collectively, the "CBAs"), including both the New York City Heavy Construction and Excavating Industry CBAs ("Heavy CBAs") and Demolition, Debris, Asbestos Removal and Toxic Waste CBAs ("Demolition CBAs").

12.     In particular, Amanda was bound to the Heavy CBA for the period of July 1, 1996 through June 30, 1999 (the "1996 Heavy CBA"). In addition, Amanda has been bound to the following Demolition CBAs: the Memorandum of Agreement for the periods July 1, 1996 through June 30, 1999; July 1, 1999 through June 30, 2002; July 1, 2002 through June 30, 2005; and July 1, 2008 through June 30, 2011. By its conduct, Amanda evinced intent to be bound by the Demolition CBA in effect for the period July 1, 2005 through June 30, 2008 (the "2005 Demolition CBA"), and thereby adopted the agreement by its conduct. Specifically, from at least July 1, 2005 to December 31, 2008, Amanda remitted contributions due at the applicable contribution rates prescribed by the Demolition CBAs. In addition, Amanda has submitted to a series of payroll audits, including for two for the period June 30, 2005 to December 31, 2006 (Audits #07-0481 and #07-480). In addition, upon information and belief, Amanda paid its employees at the correct wage rates under the Demolition CBAs.

13.     Pursuant to the 2005 Demolition CBA, "[i]f an Employer engages in work

in the Excavating Industry, the Heavy CBAs shall apply to that work. It is understood and agreed that when an Employer performs demolition and debris removal work below street level as part of his work continuously on the jobsite, it shall be considered work covered by this Agreement; however, if the Employer leaves the site, and returns at a later date to go below street level, it shall be considered excavating work." Section 40. Defendants did perform work in the referenced Excavating Industry, and are therefore liable for amounts due under the applicable Heavy CBA, in effect from July 1, 2006 through June 30, 2009 (the "2006 Heavy CBA"). The 1996 Heavy CBA, 2006 Heavy CBA, and Demolition CBAs are collectively referred to as the "CBAs."

14. At all times relevant to this action, the CBAs required Employers that are parties thereto to make contributions to the Funds on behalf of their covered employees, at specified rates for each hour of covered employment (with rates differing depending on the type of work performed), subject to certain limitations and premium payments which are set forth therein.

15. The CBAs bind Employers to the Trust Agreement.

The Trust Agreement and the Obligation to Permit an Audit

16. The Trust Agreement requires an Employer to submit remittance reports and contributions to the Funds. These reports include the Employer's monthly statement of the number of hours worked by its employees who are covered by the CBAs as well as the Employer's corresponding monthly contribution to each Fund.

17. The Trust Agreement requires an Employer to submit to periodic audits. Specifically, Article IX, Section 1(d) of the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any Employer in connection with" the Employer's contributions to the Funds.

- 5 -

18.     Article IX, Section 1(d) of the Trust Agreement defines "pertinent books and records" to include but not be limited to:

> (a)     Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;
>
> (b)     Payroll tax records submitted to federal and state governments, including Forms 941, W-2;
>
> (c)     Complete business income tax returns;
>
> (d)     Cash disbursements records;
>
> (e)     General ledgers;
>
> (f)     Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and
>
> (g)     Any other records specifically requested by the Funds' auditors, including the classification of Employees, their social security numbers, and the amount of wages paid and hours worked.

19.     Article IX, Section 1(d) of the Trust Agreement additionally provides that pertinent books and records of an Employer include:

> the books and records of any business which is bound by a collective bargaining agreement with the Union which requires contributions to any of the Funds and any other business entity which is affiliated with such business and which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a group of trades or businesses "under common control," as that term is used in 29 U.S.C. §1301(b)(1) for withdrawal liability purposes, which includes the Employer.

20.     The Trust Agreement requires an Employer to submit to audit in order to verify that all contributions required under the CBAs have been remitted to the Funds, that such contributions have been made solely on behalf of individuals eligible to participate in the Funds and that covered employees are receiving the required benefits and/or credits.

21.     Article IX, Section 1(f) of the Trust Agreement provides that the Trustees may "apply for and be entitled to a mandatory injunction directing the Employer to produce its

- 6 -

said books and records for audit."

22.     Article IX, Section 1(e) of the Trust Agreement further provides that an Employer who fails to submit remittance reports and/or pertinent books and records within twenty days of written demand must pay an increased monthly contribution, which is computed by first adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) remittance reports submitted by the Employer (hereinafter referred to as the "base month"). This provision further states that: (1) in the event that an audit discloses unreported hours for the base month, the amount of said unreported hours plus 10% thereof shall be added to arrive at the total number of covered hours, and (2) if there is no base month because there are no previous remittance reports or audit reports, then the Employer shall be deemed to have the number of employees that the Union reports in writing that the Employer is employing, with each employee deemed to have worked 40 hours per week for the entire unreported period. Once a total number of covered hours is arrived at by the above-described methods, it is then multiplied by the current contribution rates to determine the Employer's contribution liability.

23.     Article IX, Section 1(f) of the Trust Agreement additionally provides that an Employer who submits remittance reports, but thereafter fails to comply with an audit request within twenty days of written demand, is liable for an additional monthly contribution, which is computed "by taking 50 percent of the number of hours reported for that month and [] multiplying said number of hours by the current contribution rate."

24.     Where an audit discloses a delinquency, an Employer, in addition to paying the contributions identified as being owed, is required under Article IX, Section 3 of the Trust Agreement to pay interest on the monies due, liquidated damages, attorney's fees, audit

fees, filing fees, and costs. Pursuant to Article IX, Section 3, as amended, interest is calculated at the rate of 1-1/2 percent per month. Interest is due from the first day of the month when the payment was due to the date when payment is made.

**The Failure to Pay Amounts Due on the January 1, 2007 through December 31, 2007 Audit of Amanda's Books and Records under the Heavy CBAs**

25.     The Trustees' auditor audited Amanda's books and records for the period from January 1, 2007 through December 31, 2007 for work Amanda performed under the 2006 Heavy CBA (Audit #09-0021-R1), and issued a November 20, 2009 report of their findings (the "Audit Report"). The Audit Report disclosed that Amanda owes $10,408.10 in Welfare Trust Fund contributions, $8,190.00 in Pension Trust Fund contributions, $11,938.25 in Annuity Trust Fund contributions, $107.40 in Job Training Trust Fund contributions, and $4,000.15 in Vacation Trust Fund contributions, for a total amount of $34,643.90 in contributions due, plus $1,255 in audit costs, and interest on the contributions at the rate of eighteen percent per year, and other attendant damages due under ERISA.

26.     By letter dated March 28, 2011, the counsel for the Funds demanded payment of the amounts due pursuant to the Audit Report.

27.     Amanda has failed to pay the amounts due pursuant to the Audit Report.

**The Failure to Submit to Audit**

28.     By letters dated August 17, 2009, September 9, 2009, and October 1, 2009, the Funds' auditors requested that Amanda submit to an audit for the period from January 1, 2008 through June 30, 2009.

29.     By letter dated March 28, 2011, Funds' counsel requested that Amanda submit to an audit for the period commencing January 1, 2008.

30.     Despite the foregoing actions, Amanda has failed to produce its books and

records to audit and pay amounts which would be due as a result of an audit and/or estimated audit.

## FIRST CAUSE OF ACTION

31.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

32.     Section 515 of ERISA, 29 U.S.C. §1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

33.     Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

34.     Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that, "[i]n any action brought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan –

        (a)    the unpaid contributions,

        (b)    interest on the unpaid contributions,

        (c)    an amount equal to the greater of –

                (i)    interest on the unpaid contributions, or

                (ii)   liquidated damages. . . in an amount not in excess of 20 per cent of the [unpaid contributions],

        (d)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(e)     such other legal or equitable relief as the court deems appropriate . . . ."

35.     Section 502(g)(1) of ERISA, 29 U.S.C. §1132 (g)(1), further provides that "[i]n any action under this subchapter [other than one described in 502(g)(2)] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action . . . ."

36.     As reflected in the Audit Report, Amanda has failed to remit contributions to the Funds for covered work performed by its employees under the 2006 Heavy CBAs for the period from January 1, 2007 through December 31, 2007.

37.     Amanda is liable for the difference in contributions remitted to the Funds and the amounts that should have been remitted to the Funds as identified by the Audit Report, plus interest, audit fees, liquidated damages, attorney's fees and costs.

38.     Amanda's failure to remit contributions to the Funds for hours worked by individuals performing covered work constitutes a failure to make contributions in accordance with the terms of the plan documents of the Funds in violation of Sections 502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, giving rise to an action under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

39.     Because Amanda does business as Breeze, Breeze is liable for the foregoing amounts as well.

## SECOND CAUSE OF ACTION

40.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

41.     Audit #09-0021-R1 reflects that Amanda underpaid contributions due to the Funds for the period from January 1, 2007 through December 31, 2007.

42.     Amanda's failure to remit contributions to the Funds for hours worked by individuals performing covered work constitutes a failure to make contributions in accordance with the terms of the plan documents of the Funds in violation of Sections 502 and 515 of ERISA, 29 U.S.C. §§1132 and 1145, giving rise to an action under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3).

43.     Amanda, by virtue of its failure to submit to an audit for the period commencing January 1, 2008, is subject to an injunction ordering it to submit immediately to such audit and is required to pay the contributions due according to the audit, interest, liquidated damages, audit fees, attorney's fees, and costs.

44.     Amanda, by virtue of its failure to submit to an audit within twenty (20) days of written demand, is further liable for an increased monthly contribution for each month during the period for which the books and records were not produced.

45.     In accordance with Article IX, Section 1(e) of the Trust Agreement, for each month in which an Employer failed to submit remittance reports and/or failed to submit pertinent books and records to the Funds' auditors within twenty days of written demand, the Employer's contribution rate due under the Trust Agreement provision is computed as stated therein.

46.     In accordance with Article IX, Section 1(f) of the Trust Agreement, for each month in which an Employer did submit remittance reports but failed to submit pertinent books and records for audit within twenty days of written demand, the Employer's increased monthly contribution rate due under this Trust Agreement provision is computed as stated therein.

47.     Amanda is also required to pay interest, liquidated damages, audit fees,

- 11 -

attorney's fees, and costs in accordance with Article IX, Section 3 of the Trust Agreement and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

48.     Amanda, by failing to submit to an audit and/or pay amounts due as a result of an audit or estimated audit, and as required by the CBA and the Trust Agreement, has violated Section 515 of ERISA, 29 U.S.C. §1145, by failing to make contributions in accordance with the terms of the plan documents of the Funds, thereby giving rise to an action under Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), and remedies under Section 502(g) of ERISA, 29 U.S.C. §1132(g).

49.     Because Amanda does business as Breeze, Breeze is liable for the foregoing amounts as well.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request that the Court enter a judgment and injunction:

1.     Ordering Defendants to pay to the Funds (i) $34,643.90 in contributions determined to be due based on the audit of Amanda for the period from January 1, 2007 through December 31, 2007, (ii) interest on the contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment, (iii) an amount equal to the greater of (a) interest charged on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid contributions, (iv) $1,255 in audit costs;

2.     Ordering Defendants to submit to an audit its books and records for the period from January 1, 2008 through the date of the audit;

3.     Ordering Defendants to pay (i) any delinquencies identified by the audit, (ii) interest on the contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment, (iii) an amount equal to the greater of

(a) interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid

contributions, and (iv) the cost of the audit;

        4.      In the event Defendants do not submit to audit, ordering Defendants to pay

(i) increased contributions in an amount computed under Article IX, Sections 1(e) and/or 1(f) of

the Trust Agreement for the period from January 1, 2008 through the date of the audit,

(ii) interest on the contributions at the rate of 18% per year from the first day of the month when

the payment was due through the date of payment, (iii) an amount equal to the greater of

(a) interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid

contributions, and (iv) the costs incurred in estimating the amounts due;

        5.      Awarding plaintiffs reasonable attorney's fees and costs of this action

pursuant to Sections 502(g)(1) and (g)(2) of ERISA, 29 U.S.C. §§1132(g)(1) and (g)(2), and

Article IX, Section 3 of the Trust Agreement; and

        6.      Ordering such other legal and equitable relief as the Court deems proper.

Dated: March 25 2012
      New York, New York

                               Respectfully submitted,

                               Peter Herman
                               Zachary N. Leeds
                               COHEN, WEISS and SIMON LLP
                               330 West 42nd Street
                               New York, New York 10036
                               (212) 563-4100

                               Attorneys for Plaintiffs